UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| SUZANNE R. HEER, an individual, | ) | Civil Case No.: 1:12-cv-01059-RB-KBM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **RESPONSE TO PLAINTIFF'S** |
| COSTCO WHOLESALE CORPORATION; | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| RUBBERMAID, INC.; | ) | |
| | ) | |
| TRICAM INDUSTRIES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

NOW COME the Defendants, COSTCO WHOLESALE CORPORATION (hereinafter "Costco"), RUBBERMAID, INC. (hereinafter "Rubbermaid") and TRICAM INDUSTRIES, INC. (hereinafter "Tricam"), by and through their attorneys, and for their Response to Plaintiff's Motion for Summary Judgment, state:

## INTRODUCTION

Plaintiff's motion for summary judgment "regarding the availability of post-sale injunctive relief under New Mexico law" is (1) unsupported by legal authority, and (2) unsupported by material facts. More specifically, without providing a permissible legal or factual basis, Plaintiff moves this Court to issue an Order, pursuant to Fed.R.Civ.P. 56 ("FRCP 56"), which entitles Plaintiff to "*an Order from this Court holding ... that if a defect is proven at trial, post-sale injunctive relief is available under New Mexico law.*" (Plaintiff's Motion, P. 8)  Plaintiff contends her motion is supported by New Mexico Uniform Jury Instruction 13-1402 (UJI 13-1402), and *Couch v. Astec Industries, Inc.*, 132 N.M. 631, 53 P.3d 398 (N.M. App. 2002). (Plaintiff's Motion, P. 8)  However, neither

UJI 13-1402, nor *Couch* establish that summary judgment entitles Plaintiff to an Order granting "the availability of post-sale injunctive relief under New Mexico law."

Although Plaintiff "relies" upon UJI 13-1402 and *Couch*, **_neither the language of the jury instruction, nor case law, even mentions post-trial injunctive relief, let alone authorizes it_**. Accordingly, Plaintiff's motion entirely fails to provide any legal authority for the proposition that, as a matter of law pursuant to FRCP 56, Plaintiff would be entitled to post-sale *injunctive relief* if a stool defect is proven at trial. In sum, *Plaintiff's Motion is both (1) unsupported by legal precedent and (2) Plaintiff does not claim that she is attempting to create new law.*

Additionally, Plaintiff's motion does not contain material facts which establish that she is entitled to an Order "that if a defect is proven at trial, post-sale injunctive relief is available under New Mexico law." Plaintiff's "Statement of Material Facts" **only cites** (1) her *unverified* Complaint, and (2) the *inadmissible affidavit of her attorney*. (Plaintiff's Motion, Pgs. 4-5, ¶¶1-10) Thus, Plaintiff's motion for summary judgment should be denied because Plaintiff has failed to meet her burden of providing material facts which are evidentiary support for her motion, as required by FRCP 56.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S "STATEMENT OF MATERIAL FACTS"

Plaintiff's "Statement of Material Facts" cites the allegations contained in Plaintiff's *unverified* Complaint (Plaintiff's Motion, P.4, ¶¶ 1, 2, 3, 5, 6, & 7). However, the allegations do not provide evidentiary establishing that Plaintiff is entitled to summary judgment "regarding the availability of post-sale injunctive relief under New Mexico law, if a defect is proven at trial." The Court is precluded from considering the allegations of an *unverified* Complaint as the equivalent of an affidavit for purposes of

FRCP 56(e). *Ziegler v. Eby,* 77 F. App'x 117, 120 (3d Cir. 2003).   Nevertheless, Respondents do not contest the following paragraphs of Plaintiff's "Statement of Material Facts". (Pursuant to Local Rule 56.1(b), each of the numbered paragraphs below directly corresponds to the paragraph numbers contained in Plaintiff's Statement of Material Facts section):

      1.      Respondents ***admit that Plaintiff's Complaint alleges:*** (1) Breach of Express Warranty against Tricam; (2) Breach of Implied Warranty against Tricam; (3) Negligence against Tricam; (4) Strict Liability against all Defendants; (5) New Mexico Unfair Practices Act against Tricam and Rubbermaid.   However, Tricam and Rubbermaid's Answers to Plaintiff's Complaint contest the germane allegations of defect and causation contained in Plaintiff's Complaint. (ECF Doc. No. #12, 13 & 14, Defendants' Answers)

      2.      Respondents ***admit that the Plaintiff's Complaint alleges*** that the stepstool is defective.   However, as argued in Defendants' Motion for Summary Judgment, Defendants contend that Plaintiff's allegations are not supported by evidence. (ECF No. #84 & 85, Defendants' Motion for Summary Judgment and Brief in Support Thereof).   The exhibits, authority, and arguments presented in Defendants' Motion for Summary Judgment and Motion in Limine to Exclude the Testimony of Bradley Stolz is hereby incorporated into this Response.

      3.      Respondents ***admit that Plaintiff's Complaint alleges*** that Plaintiff suffered physical injury as a result of her accident.

5.      Respondents **_admit that Plaintiff's Complaint seeks_** "an order permanently enjoining Respondents from selling the Subject Product and similarly-affected products without disclosure of the defective condition(s)".

6.      Respondents **_admit that Plaintiff's Complaint seeks_** "an injunction requiring that Respondents notify all affected owners of the defect(s)".

7.      Respondents **_admit that Plaintiff's Complaint seeks_** "such other and further relief, including equitable and injunctive relief, as the Court deems appropriate".

In sum, Plaintiff seeks an order requiring Respondents to recall existing TR-3HB-RMs and modify the warnings with some unknown language on that model sold after the jury verdict and injunctive order.

## DEFENDANTS' STATEMENT OF CONTESTED MATERIAL FACTS

Plaintiff's "Statement of Material Facts" relies upon the declaration of her attorney, Edward Anaya. (Plaintiff's Motion, Pgs. 4-5, ¶¶ 4, 8, 9, & 10) _Thus, Mr. Anaya is attempting to fulfill the roles of both witness and advocate_. However, the "advocate-witness rule" **bars counsel** from acting _as both advocate and witness in single proceeding_ except under special circumstances. _Petrilli v. Drechsel,_ 94 F.3d 325 (7th Cir. 1996) (emphasis added).   Moreover, Rule 16-307 of the New Mexico Rules of Professional Conduct states that, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" except when (1) the testimony relates to an uncontested issue; or (2) the testimony relates to the nature and value of legal services rendered in the case.  Rule 16-307 NMRA Plaintiff has not demonstrated that any exception to Rule 16-307 is applicable.   Rule 16-307 applies to this proceeding since Local Rule 83.9 of the Local Rules of Civil Procedure states that "[t]he Rules of

Professional Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court order."   D.N.M.LR-Civ 83.9.

Furthermore, FRCP 56(e) requires that "[s]upporting … affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."   In reviewing motions for summary judgment, courts may not consider affidavits or declarations that do not comply with these requirements.  *El Deeb v. Univ. of Minnesota*, 60 F.3d 423, 428 (8th Cir. 1995).  All matters set forth in declarations must be based on personal knowledge and statements in a declaration are inadmissible unless the declaration itself affirmatively demonstrates that the declarant has personal knowledge of those facts.  *Love v. Commerce Bank of St. Louis, N.A.*, 37 F.3d 1295, 1296 (8th Cir. 1994).   To be admissible to support a motion for summary judgment, declarations  must also set out specific facts, not mere conclusory allegations. (*See also Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (holding that the object of FRCP 56 is not to replace conclusory averments in a pleading with conclusory allegations in an affidavit).   Additionally, FRCP 56(e) requires that declarations contain statements that would be otherwise "admissible in evidence," so declarations cannot contain hearsay. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Lacking personal knowledge, an attorney is not qualified to testify, and unauthenticated documents cannot support summary judgment.  *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).  Thus, Mr. Anaya's Affidavit should be stricken.

FRCP  56(c)(1)(B) provides  that  a  party  opposing  summary  judgment  may support its contention that a fact cannot be or is genuinely disputed by:

Showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FRCP 56(c)(2) provides the procedure parties may invoke when a fact is supported by inadmissible evidence:

A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

Respondents contend that Plaintiff's stated material facts, which _only_ cite Mr. Anaya's Declaration, cannot be presented in a form that would be admissible evidence. Therefore, Pursuant to Local Rule 56(c)(2), Respondents object to the following "statement of material facts" asserted by Plaintiff (Pursuant to Local Rule 56.1(b), each of the numbered paragraphs below corresponds to the paragraph numbers contained in Plaintiff's Statement of Material Facts section):

4.     Objection, Plaintiff's stated material fact cannot be presented in a form that would be admissible evidence.

8.     Objection, Plaintiff's stated material fact cannot be presented in a form that would be admissible evidence.

9.     Objection, Plaintiff's stated material fact cannot be presented in a form that would be admissible evidence.

10.     Objection, Plaintiff's stated material fact cannot be presented in a form that would be admissible evidence.

## STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to Local Rule 56.1(b), Respondents present the following additional material facts:

6

1.      On the date of her accident, February 12, 2012, Suzanne Heer ("Heer") was 5 feet, 1-2 inches tall, and weighed 155 lbs. (ECF Doc. No. 85, Exhibit 1, Heer Dep., 24:25; 25:1-11)

2.      Between the stool's purchase May 4, 2011 and February 12, 2012, Ms. Heer used the stool without incident approximately 15 times. (ECF Doc. No. 85, Exhibit 1, 8:4-10)(Emphasis added)

3.      Heer's fall occurred as she reached with her right hand toward the vent's lever (Exhibit 1, 20:19-23) (ECF Doc. No. 85, Exhibit 2, Statement Under Oath by Ms. Heer, 25:13-15)

4.      Prior to the stool's manufacture, design testing proved the stool met the applicable requirements of ANSI A14.23 including the Cantilever Bending Test. (ECF Doc. No. 83, Exhibits 3 and 4)

5.      As part of quality control, stepstools manufactured in the accident stool's month of manufacture (February, 2011) were Compression tested [a 900 pound load was placed on the stool's platform (top step)]. No failure occurred. The steps were also tested in a similar manner. (ECF Doc. No. 83, Exhibit 6)

6.      Group (ECF Doc. No. 83, Exhibit 6) test results show that the TR-3HB-RM's front legs underwent the Cantilever Bending test. In this test, the stool is placed on its side with the test leg in a horizontal position (ECF Doc. No. 83, Exhibit 4). A load of 150 pounds is applied at the bottom of the leg in both "inward" and "outward" directions. This test determines the ability of a ladder's front legs to withstand lateral loads far in

excess of loads (including impact loads) applied to a leg in normal use (such as dropping a ladder on its leg).

7.      The Model TR-3HB-RM met both the ANSI A14.2 Compression and Cantilever Bending Test requirements as well as other germane ANSI tests performed during quality control testing in February, 2011. (ECF Doc. No. 83, Exhibit 6)

8.      Post-accident exemplar ANSI testing by Dr. Mack Quan ("Quan") confirmed that the TR-3HB-RM met the germane ANSI A14.2 tests for stepstools including the Cantilever Bending Test. Dr. Quan's "in use" testing proves that normal and even abnormal use does not cause leg failure. (ECF Doc. No. 83, Exhibits 7, 8, 9 and 10)

9.      Plaintiff's expert, Bradley Stolz's ("Stolz") Rule 26(a)(2)(B) report did not contradict or contest the germane ANSI A14.2 test results included in the Model TR-HB-RM pre-purchase test report provided to the Plaintiff (ECF Doc. No. 83, Exhibit 3).

10.     Stolz's Rule 26(a)(2)(B) report does not contradict or contest the germane ANSI A14.2 test results included in the quality control test reports for the accident stool's month of manufacture. (ECF Doc. No. 83, Exhibits 6 & 13)

11.     Stolz did not contradict or contest Quan's exemplar test results proving that (a) the TR-3HB-RM passes the germane ANSI A14.2 test protocols nor does Stolz contradict or refute, (b) user testing by a 235 pound tester proving that the damage to the Heer stool could not occur unless Heer first tipped the stool over and impacted the left leg. (ECF Doc. No. 83, Exhibit 7)

12.     Stolz did not contradict or refute Quan's ("Quan") stool testing which reproduced the accident stool's damage by impact loading the stool's leg. (ECF Doc. No. 83, Exhibit 7)

13.     Stolz does not contest or refute Quan's observation that when the stool model is set on a flat level surface and the second step is loaded as Heer claims, the vectors of force created by Heer's load on the second step are directed outward contrary to the inward damage seen on the accident stool. (ECF Doc. No. 83, Exhibit 7)

**ARGUMENT**

**I.     PLAINTIFF FAILS TO MEET HER BURDEN BY DEMONSTRATING THE (1) ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT AND (2) ENTITLEMENT TO JUDGMENT AS A MATTER OF LAW**

Plaintiff, as movant, bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir. 2002). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).   Moreover, Plaintiff bears both initial and ultimate burden of demonstrating her legal entitlement to summary judgment, and she cannot prevail on her motion if any essential element of her claim requires trial. *Lopez v. Corporacion Azucarera de Puerto Rico,* C.A.1 (Puerto Rico) 1991. Plaintiff must satisfy her burden by pointing to evidence in the record that supports her version of all material facts and demonstrates absence of any genuine issue of material fact. *DeWitt v. Penn-Del Directory Corp.,* D. Del. 1994, 872 F. Supp. 126.

Plaintiff has not met her burden.  Plaintiff's "statement of material facts" is void of evidence that would entitle her to "an Order from this Court holding…that if a defect is proven at trial, post-sale injunctive relief is available under New Mexico law".

## II.   NEITHER UJI 13-1402 NOR *COUCH* ENTITLE PLAINTIFF TO SUMMARY JUDGMENT

Plaintiff's motion claims that she is entitled as a matter of law to a summary judgment ruling that "if defect is proven at trial, post-sale injunctive relief is available under New Mexico law".  Plaintiff claims that UJI 13-1402 and *Couch* contain a legal foundation for this relief.  Thus, in order for the Court to grant summary judgment entitling (1) Plaintiff to post-sale injunctive relief (2) in the event that she proves defect at trial, (3) this Court would be required to rule that (a) *pursuant to FRCP 56*, (b) UJI 13-1402 provides for (c) the availability of post-sale injunctive relief, and (d) an order granting post-sale injunctive relief has not been preempted by the Consumer Product Safety Act.

### A.   UJI 13-1402 IS NOT A LEGAL BASIS FOR POST-TRIAL INJUNCTIVE RELIEF

UJI 13-1402 states:

*        *        *

The supplier of a product has a duty to use ordinary care to avoid a foreseeable risk of injury caused by a condition of the product or manner in which it is used. This duty is owed [to persons who can reasonably be expected to use the product] [and] [to persons who can reasonably be expected to be in the vicinity during the use of the product.]

[The supplier's duty to use ordinary care continues after the product has left [his] [her] [its] possession. A supplier who later learns, or in the exercise of ordinary care should know, of a risk of injury caused by a condition of the product or manner in which it could be used must then use ordinary care to avoid the risk.]

*        *        *

The "Directions for Use" for UJI 13-1402 state that:

This instruction must be given in any products liability case in which the court submits negligence as a theory of liability. The instruction ordinarily will be followed by UJI 13-1403 and UJI 13-1404, defining the duty of all product suppliers.

Moreover, the "Directions for Use" of UJI 13-1402 also state that:

The bracketed second paragraph shall be given only where an issue is presented concerning a supplier's failure to act to prevent injury after selling the product and learning of a risk.

Thus, to invoke the use of the first part of 13-402, Plaintiff first has to demonstrate that her negligence theory of liability would be submitted to the jury. However, Defendants have presented evidence that Plaintiff's negligence claim should not be submitted to the jury (Statement of Additional Material Facts No. 1-13).   Thus, "Summary Judgment" cannot be granted because a material issue of fact exists as to (1) whether the Respondents were negligent, (2) because they knew or should have known of (3) a defect which caused Heer's fall (4) before the fall occurred and (5) failed to comply with CPSC regulations concerning a stool recall[1].

More importantly, **the plain language of UJI 13-1402 does not authorize, encourage, or even mention the availability of _injunctive relief_**.   Thus, Plaintiff's Motion should be denied on that basis.

Moreover, Plaintiff has not provided evidence that Respondents' alleged post-sale negligence (i.e., failing to recall the stepstool after learning of a defect before Heer's fall) caused Heer's fall.   Thus, this Court cannot conclude that Plaintiff will be entitled to submit the bracketed second paragraph of UJI 13-1402 to the jury.   Accordingly, Plaintiff's motion for summary judgment should be denied.

**B.     _COUCH v. ASTEC_ DOES NOT ESTABLISH THAT PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT**

---

[1] There is no private cause of action for "failing to recall". _Drake v. Honeywell, Inc._, 797 F.2d 603 (1986).

The Plaintiff in *Couch* did not seek summary judgment on a jury instruction. Instead, *Couch* held that the trial court properly instructed the jury as to the manufacturer's post-sale duty to retrofit a conveyer system with safety devices. *Couch* did not address a consumer product such as a stepstool. Furthermore, *Couch* did not hold that the Plaintiff was entitled to injunctive relief. In fact, the *Couch* opinion does not contain any reference to the availability, or enforcement, of "injunctive relief". Instead, *Couch* held the following jury instruction was a correct statement applied to the specific facts of that case:

> "The supplier's duty to use ordinary care continues after the product has left [his/her/its] possession. A supplier who later learns, or in the exercise of ordinary care should know, of a risk of injury caused by a condition of the product or manner in which it could be used must then use ordinary care to avoid the risk."

*Couch*, 132 N.M. at 631, 641, 643.

In *Couch*, the Plaintiff was injured due to the absence of a safety device (pull cord) which would have stopped a conveyor from operating. *Id*. at 633. The Court found that (1) the manufacturer voluntarily set up and tested the conveyor, (2) the manufacturer was available by telephone to service the conveyor, (3) the manufacturer hosted an annual meeting to discuss safety issues with customers and (4) critical safety technology was in existence at the time the conveyor was manufactured about which the manufacturer knew or should have known. *Id*. at 643. The court in *Couch* held that because of the above facts, the trial court did not err in recognizing the manufacturer's duty **to retrofit** the conveyor with safety devices. *Id*. at 641 ***The court in Couch did not provide the Plaintiff with injunctive relief, order a retrofit, or find that UJI 13-1402 permits injunctive relief.***

Instead, the court in *Couch* stated:

> The instruction tells a jury only that a supplier who, after the sale of the product, knows or should know of any risks associated with the product, "must then use ordinary care to avoid the risk." UJI 13-1402. Thus it is for the jury to determine what steps-whether by warning or retrofitting or some other means-a supplier must take in the exercise of ordinary care. *Id*.

The Court found that the "Defendant could be found to have **voluntarily** undertaken the responsibility described in UJI 13-1402" and "the jury could have reasonably inferred that Defendant knew or should have discovered some time before Plaintiff's accident that **the absence of pull cords on conveyors created a risk of injury requiring remedial measures**." *Id*. at 643. Again, the Court in *Couch* did not state, or hold, that the Plaintiff was entitled to post-sale injunctive relief or order that the Defendant modify the conveyor.  Moreover, the product at issue in *Couch* was not a consumer product. Thus, *Couch* has no relationship to this case.

Furthermore, Plaintiff's motion does not provide an iota of evidence that the Respondents had any contact with Heer post-stool sale, that could result in her being informed that a non-existent defect claimed by her attorney and Mr. Stolz actually exists.

Spuriously, Plaintiff states that "as evidenced by UJI 13-1402 and *Couch*, New Mexico law clearly provides for post-sale remedies as a form of injunctive relief".  Since it is clear that neither UJI 13-1402 nor *Couch* authorize post-sale injunctive remedies, Plaintiff's attempt to argue otherwise cannot be based upon "existing law" or a "non-frivolous argument" to extend existing law or establish new law. Plaintiff has not informed the Respondents, or the Court, that her Motion[2] seeks to extend or modify

---

[2] On August 22, 2013, in accordance with Rule 11, Defendants tendered Plaintiff "Safe Harbor" notice that the legal contentions contained in Plaintiff's Motion for Summary Judgment were not warranted by existing law.

existing law. Respondents have been forced to expend resources responding to this motion, which is legally and factually baseless.

### III. THE CONSUMER PRODUCT SAFETY COMMISSION HAS EXCLUSIVE AUTHORITY OVER ANY RECALL OF THE SUBJECT STEPSTOOL

While Plaintiff seeks a "recall" of the TR-3HB-RM or an injunction prohibiting its sale, Plaintiff has not presented any legal authority nor does Plaintiff contend that this Court has jurisdiction to initiate, conduct, and oversee a recall of the Model TR-3HB-RM. Respondents contend that the United States Consumer Product Safety Act ("CPSA") vests exclusive authority with the Consumer Product Safety Commission ("CPSC") to initiate, conduct, and oversee recalls of consumer products, such as the subject stepstool model. Therefore, Defendants contend that this Court would not have the authority to grant Plaintiff post-sale injunctive relief, such as a recall of the TR-3HB-RM.

The Supremacy Clause of the United States Constitution provides that "the laws of the United States shall be the supreme Law of the land; … anything in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Constitution. Art. VI. When a state attempts to regulate an area already controlled at the federal level, the federal law prevails, leaving the state law "without effect." *Cipollone v. Ligget Group, Inc.*, 505 U.S. 504, 516, 120 L.Ed. 407 (1992). Implied preemption can occur (1) when the federal scheme so extensively regulates an area that it occupies the regulatory field; and (2) when a state law claim actually conflicts with federal law. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 1487 (1995). When engaging in an implied preemption analysis, courts should consider the unique federal character of post-sale warning and

recall campaigns. *U.S. v. Locke*, 529 U.S. 89, 120 S.Ct. 1135, 1152 (2000). The national

character of post-sale warning and recall campaigns makes state oversight of post-sale

warnings and recalls difficult, if not impossible. In rejecting the possibility of a state law

recall, one U.S. District Court stated:

> …Not surprisingly, state law simply does not provide a basis for worldwide recalls.
>
> At the outset I note, as has defendant, **that the prospect of a state-based recall action raises a significant choice of law problem, as well as a jurisdictional problem. It is difficult to understand where a court applying Massachusetts law, for example, would get the authority to order a worldwide recall of a product manufactured in another state or states. Yet, even if there were answers to these questions, there remain more fundamental problems.**
>
> **No court has ever ordered a notification and recall campaign on the basis of state law.** *National Women's Health Network, Inc. v. A.H. Robins Company, Inc.*, 545 F. Supp. 1177, 1179 (D. Mass. 1982) (emphasis added)

Moreover, Congress has determined that the CPSA controls recalls with the

manufacturer or retailer. In turn, the CPSC then determines whether and how a recall

campaign is conducted. 15 U.S.C. §2064(c)-(d). Where Congress grants broad authority

to a federal administrative agency, a "narrow focus [solely] on Congress' intent to

supersede state law is misdirected." *City of New York v. Federal Communications*

*Comm'n*, 486 U.S. 57, 64 (1998). "The correct focus is [also] on the federal agency that

seeks to displace state law and on the proper bounds of its unlawful authority to

undertake such action." *City of New York*, supra, at 64.

> [M]any of the responsibilities conferred on federal agencies involve a broad grant of authority to reconcile conflicting policies. Where this is true, the Court has cautioned that even in the area of preemption, if the agency's choice to pre-empt "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."

*City of New York*, 486 U.S. at 64, 108 S.Ct. 1637.

Congress gave the CPSC very broad authority to reconcile the competing policies of public safety, national uniformity, and the burden of regulation on manufacturers. 15 U.S.C. §12051.  Among other things, Congress gave the CPSC the power:

- To mandate exclusive federal regulatory safety standards for design, testing, and performance (15 U.S.C. §2056);
- To demand product labels contain specific information (15 U.S.C. §2063);
- To independently test products for safety (15 U.S.C. §2054(b));
- To conduct research studies or hearings for any purpose related to their responsibilities (15 U.S.C. §54(b), 15 U.S.C. §2076); and
- To collect, analyze, and investigate accidents involving products under their jurisdiction (15 U.S.C. §2054(a)).

Most importantly, in reconciling the policies charged to its discretion, the CPSC has broad authority over a manufacturer's post-sale notice or recall campaign.  15 U.S.C. §2064.  Accordingly, the CPSC – by manifesting its own preemptive intent – can preempt New Mexico state law.  The federal regulatory scheme preempts state law common law actions alleging post-sale warning and recall campaigns because the CPSA and oversight by the CPSC occupy the entire regulatory field. State common law liability would thwart the purpose and objectives of the federal regulatory scheme.  Such campaigns must be conducted on a national scale to be effective and have historically been administered at the federal level.  Generally, the only state involvement in such campaigns starts after the campaign is over – when a plaintiff attempts through hindsight to second-guess the campaign and impose common law liability.

The CPSA states:

It is intended that Federal authority – once exercised – occupy the field and broadly preempt State authority to regulate the same product hazards. House (Committee on Interstate and Foreign Commerce, Report No. 92-1153, p.49)

Thus, Plaintiff's Motion seeks relief which this Court, by preemption, may not provide.

## IV.    PLAINTIFF HAS NOT PRESENTED ANY EVIDENCE TO ESTABLISH THAT SHE IS ENTITLED TO INJUNCTIVE RELIEF

A federal court may not grant the extraordinary equitable remedy of an injunction prohibiting the sale of a consumer product if the complaining party has a plain, adequate and complete remedy at law. *Porto Rico Tel. Co. v. Puerto Rico Communications Authority*, C.A.1 (Puerto Rico) 1951, 189 F.2d 39.  Plaintiff seeks money damages from Respondents. (Plaintiff's Complaint, p. 5).  Therefore, Plaintiff has a plain, adequate and complete remedy at law.

Moreover, equitable relief should not be granted where hardship to defendant substantially outweighs benefit to plaintiff. *Abeyta v. Town of Taos*, C.A.10 (N.M.) 1974, 499 F.2d 323.  Plaintiff has not shown that Plaintiff's benefit of receiving "some form of post-sale relief (i.e., prohibiting sale without modifying the warning labels), and possibly a product recall" would not be substantially outweighed by hardships that injunctive relief would place upon Respondents.  Further, Plaintiff has not even attempted to explain how this Court would or could enforce unspecified post-sale relief, including a prohibition of sale or product recall.  Defendants contend that it would be extremely difficult for this Court to oversee and enforce such orders.  Difficulty of enforcement is, in itself, often a sufficient reason for denying injunctive relief. *Refrigeration Engineering Corp. v. Frick Co.*, W.D. Tex. 1974, 370 F. Supp. 702.  Additionally, a court of equity will not grant injunctive relief unless it is shown that, if injunction is granted, the court will enforce the mandate.  One of the prerequisites traditionally attendant to injunctive relief is a substantial threat that plaintiff will suffer irreparable injury if the injunction is

not granted. *Bonner v. B-W Utilities, Inc.*, W.D. La. 1975, 398 F. Supp. 1390.  Plaintiff has not demonstrated that she will suffer irreparable harm if she is not provided injunctive relief.

**CONCLUSION**

In sum, Plaintiff's motion should be denied because Plaintiff has not presented any evidentiary support, or legal authority, to demonstrate that as a matter of law, she is entitled to summary judgment pursuant to FRCP 56 "regarding the availability of post-sale injunctive relief under New Mexico law."  Instead of citing to admissible evidence, or applicable legal authority, **Plaintiff's Motion entirely relies upon the assumptions that**: (1) the evidence presented at trial will permit Plaintiff to submit UJI 13-1402 to the jury; (2) the jury will rule in favor of Plaintiff and find that the stepstool contained a defect which caused her fall; (3) UJI 13-1402 entitles Plaintiff to injunctive relief (of some kind); (4) Plaintiff lacked an adequate remedy at law; (5) Plaintiff is entitled to post-sale injunctive relief; (6) this Court has jurisdiction to enforce the injunctive relief requested; and (7) this Court would grant injunctive relief (of some kind).   As demonstrated, Plaintiff's Motion for Summary Judgment should be denied.

Respectfully submitted,

*/s/ Monica R. Garcia*
Alfred Green
Monica Garcia
Butt, Thornton & Baehr, P.C.
4101 Indian School Road NW Suite 300S
Albuquerque, NM 87110
Phone: 505/884-077
Fax: 505/889-8870
algreen@btblaw.com
mrgarcia@btblaw.com

and

Mark E. Parsky
Paul Kaulas, Esq.
McVey & Parsky, LLC
30 N. La Salle Street, Suite 2100
Chicago, IL 60602
(312) 551-3414
 mep@mcveyparsky-law.com
pvk@mcveyparsky-law.com

Attorneys for Defendants

I HEREBY CERTIFY that on the 22nd day of
August, 2013, I filed the foregoing electronically
through the CM/ECF system, which cause the
following parties or counsel to be served by
electronic means, as more fully reflected on the
Notice of Electronic Filing:

Edward M. Anaya
eanaya@anayalawllc.com


*/s/ Monica R. Garcia*
Monica R. Garcia