## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

SUZANNE R. HEER, an individual,

      Plaintiff,

v.                                 No. CIV 12-1059 RB/KBM

COSTCO WHOLESALE CORPORATION,
RUBBERMAID, INC.,
TRICAM INDUSTRIES. INC.

      Defendants.

## MEMORANDUM OPINION AND ORDER

On February 12, 2012, Plaintiff, Suzanne Heer, fell from a step stool while reaching for a vent in her apartment and suffered injuries. Plaintiff now brings suit against Defendants, who are involved in the manufacture or sale of the step stool, alleging these companies are liable for her injuries. In support of Plaintiff's suit, Plaintiff plans to introduce the expert testimony of a mechanical engineer, Bradley Stolz.

Before the Court is Defendants' Motion to Exclude the Testimony of Bradley Stolz. (Doc. 82). Jurisdiction arises under 28 U.S.C. § 1332. Having considered the submissions and arguments of the parties, the relevant law, and being otherwise fully advised, the Court **GRANTS** Defendants' motion. (Doc. 82).

## Background

This product liability suit involves a TR-3HB-RM Step Stool ("the step stool"). On February 12, 2012, Plaintiff, Suzanne Heer, fell while standing on the second step of the step stool, which she purchased at Costco on May 4, 2011. The named Defendants were involved in

the sale or manufacture of the step stool. The stool was designed and manufactured by Tricam Industries, Inc. and sold by Costco. The step stool's brand, "Rubbermaid," was licensed to Tricam Industries, Inc. by Rubbermaid, Inc.

Plaintiff alleges the following pertinent facts: Plaintiff was using the step stool in her own home in accordance with the manufacturer's instructions and recommendations. (Doc. 89-4 at 18:20-22:18). The step stool "suddenly and unexpectedly collapsed from underneath her." (Doc. 89-2 at ¶ 4). The fall broke Plaintiff's arm in two places. (*Id.* at ¶ 6).

Plaintiff intends to introduce the testimony of Bradley J. Stolz to establish the cause of the step stool's collapse. Mr. Stolz obtained a Bachelor of Science in engineering with mechanical specialty in 2006 and a Master of Science in mechanical engineering in 2009. (Doc. 83-14). He is registered as a professional engineer in Colorado. Mr. Stolz has testified or given deposition testimony in three cases. (*Id.*) All cases involved motor vehicles. Mr. Stolz has published at least ten articles, mostly on issues relating to motor vehicle accident reconstruction. (*Id.*) He has not written any articles concerning the design of ladders, and his CV does not indicate that he has ever been retained in a case involving the design of a ladder. There is no indication whether he has reviewed the American National Standards Institute's (ANSI) standards for ladders. [1] (*Id.*)

Mr. Stolz's expert report concludes "a weakened section in [the step stool] at a riveted connection on the front rail" caused the step stool to fail in a lateral manner, with the rail leg folding inwards from the left side. (Doc. 83-11 at 7). According to Mr. Stolz, the weakness was a result of a hole punched into the tubular steel of the legs at rivet locations. (*Id.*) Further, Mr.

---

[1] Defendants argue that Mr. Stolz's August 13, 2013 affidavit, which discloses Mr. Stolz experience investigating ladder failures/collapses, was untimely, and should not be considered for the purposes of this motion. (Doc. 88-1). Since the Court determines Mr. Stolz is qualified, even without ladder specific experience, the Court does not resolve the timeliness issue.

Stolz opines that if the manufacturer had taken the economically and technologically feasible step of constructing the step stool stool with a lateral support of some kind, the step stool's failure would not have occurred. (*Id.*) Mr. Stolz also does not consider user error as a possible source of the Plaintiff's fall. (*Id.*)

Mr. Stolz bases his conclusions on Defendant's deposition and "laboratory examination of the step stool." (*Id.* at 3). The laboratory examination consisted of observations of the step stool and measurements. (*Id.* at 3-4). Mr. Stolz's report mentions no tests or calculations performed on the step stool or on the proposed alternative design.

Defendants move to exclude Mr. Stolz's testimony because it does not meet the requirements of Rule 702. *See* FED. R. EVID. 702. Neither party requested a *Daubert* hearing.[2] The Court determines it has sufficient evidence to evaluate Mr. Stolz's testimony without a hearing.[3] *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

<u>**Discussion**</u>

Defendants contend that Mr. Stolz is not qualified to testify on design defect or causation, and that his opinions do not meet the necessary legal standards under Rule 702 or *Daubert*.

**I.     Rule 702**

Rule 702 governs the admission of expert witness reports and testimony. Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;

---

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[3] Under Tenth Circuit precedent, "a district court has discretion to limit the information upon which it will decide the *Daubert* issue." *See  Dodge v. Cotter Corp.*, 328 F.3d 1212, 1228 (10th Cir. 2003).

    **(c)** the testimony is the product of reliable principles and methods; and

    **(d)** the expert has reliably applied the principles and methods to the facts
    of the case.

FED. R. EVID. 702.

Under *Daubert*, district courts are to perform a "gatekeeping" role in determining the admissibility of expert scientific testimony. *See Daubert*, 509 U.S. at 589-93. The objective of the gatekeeping obligation is to "ensure the reliability and relevancy of expert testimony . . . to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

Courts must conduct a two-part analysis in order to determine whether an expert's opinions are admissible. First, the court must decide whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on substantial foundation and would tend to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). Second, the court must determine "whether the witness' opinions are 'reliable' under the principles set forth" in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).

In this case, the Plaintiff, as the proponent of Mr. Stolz's expert evidence, has the burden of showing that Mr. Stolz's evidence is admissible. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

4

## II.    Qualifications

The Tenth Circuit has held that "[a]s long as an expert stays 'within the reasonable confines of his subject area,' . . . a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." *Ralston*, 275 F.3d at 970 (alteration in original) (quoting *Compton v. Subaru of America, Inc.,* 82 F.3d 1513, 1520 (10th Cir. 1996)).[4] Therefore, the question before the Court is whether Mr. Stolz's testimony regarding the alleged failure of the step stool is "within the reasonable confines" of Mr. Stolz's subject area. *Ralston,* 275 F.3d at 970.

Mr. Stolz's CV demonstrates he is qualified to offer general forensic engineering testimony on equipment failures. He is a trained engineer, with both a B.S. and M.S. in mechanical engineering. (Doc. 83-14). He has significant experience in forensic engineering, having worked as a forensic engineer for Pie Forensic Consultants since 2004. (*Id.*) While Mr. Stolz's CV specifically lists significant experience in motor vehicles, it also provides enough detail to convince the Court that Mr. Stolz has the requisite knowledge, experience and training to analyze and offer an opinion on the design of the step stool and the potential causes of Plaintiff's fall.

Moreover, there is no indication that Mr. Stolz lacks a basic understanding of ladder design. This distinguishes this case from *Sittig v. Louiville Ladder Group LLC*, 136 F. Supp. 2d 610 (W.D. La. 2001), where deposition testimony revealed the experts knew little about ladders, and *Ralston* where the expert admitted to having no experience in the areas the Plaintiff sought to

---

[4] The court recognizes that the central holding of *Compton*, which held that: "reliance on general principles and concepts is sufficient for admissibility of expert testimony," is no longer good law. *See Kumho,* 526 U.S. at 137. However, *Ralston* and subsequent Tenth Circuit cases do not specifically dispute the general principle cited here. *See Ralston,* 275 F.3d at 970. ("[T]he *Compton* court merely held that the trial court *did not* abuse its discretion when it *admitted* expert testimony based upon the expert's familiarity with general engineering principles and concepts. That is a far cry from suggesting that a district court *always* abuses its discretion when it *excludes* an expert who may have some marginal familiarity with general concepts in the relevant field." (emphasis in original)).

offer her testimony. *See Ralston,* 275 F.3d at 967-68. Unlike *Ralston*, Mr. Stolz's testimony is limited to generalities, which are well within the confines of his subject area. While this generality impacts the reliability of his testimony, the Court determines that it supports Mr. Stolz's qualification to give such testimony.

When analyzing Mr. Stolz's CV, this Court is mindful that a proposed expert "should not be required to satisfy an overly narrow test of his own qualification." *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974).[5] Thus, taking into account Mr. Stolz's education – a bachelor's degree and master's degree in mechanical engineering – training and experience, and bearing in mind that the question of whether Mr. Stolz possesses the requisite expertise is separate from the question of whether his proposed testimony satisfies the reliability component of the analysis under *Daubert* and Rule 702, the Court concludes that Mr. Stolz does have the expertise necessary to express the opinions he proposes to express in this case. *See Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1101 (W.D. Okla. 2009) *aff'd*, 405 F. App'x 296 (10th Cir. 2010).

## III.   Reliability

However, despite being qualified, Mr. Stolz's conclusions are not immune from scrutiny. Here, because Mr. Stolz's testimony is completely conclusory, the Court determines that it fails to meet the requirements of admissibility under *Daubert* and Rule 702.

The *Daubert* Court outlined four nonexclusive factors appropriate for consideration in assessing the admissibility of expert testimony: (1) whether a theory has been or can be tested or

---

[5] Even though *Gardner* is a pre-*Daubert* decision, this admonition from the Court of Appeals is still relevant. *See CRST Van Expedited, Inc. v. J.B. Hunt Transp., Inc.*, CIV.-04-0651-F, 2006 WL 2054646 (W.D. Okla. July 24, 2006).

falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has general acceptance. *Daubert,* 509 U.S. at 593-594.

"*Daubert* makes clear that the factors it mentions do not constitute a definitive checklist or test." The job of a district court is to "determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222-23 (10th Cir. 2003) (internal citations omitted).

Mr. Stolz's testimony is not scientific, nor does it address any of the *Daubert* factors. While Mr. Stolz is qualified to testify as a forensic engineer, his report does not properly draw on any specialized knowledge or utilize any discernable methodology. (*See* Doc. 83-11). "Rather [his conclusion] depends on an imperfect syllogism constructed from unsupported suppositions." *See Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250-51 (4th Cir. 1999).

In his report, Mr. Stolz attributes the step stool's failure to a design defect. He perfunctorily finds that the collapse of the step stool was not a result of misuse or a failure to follow warnings. According to Mr. Stolz's report, a hole punched into the tubular steel of the legs at rivet locations decreased the strength of the step stool's leg. This weakness in the leg of the step stool caused the front rail leg to fold inwards from the left side and for the step stool to collapse. (*See* Doc. 83-11 at 6).

Yet, Mr. Stolz did not test his hypothesis. Under *Daubert*, a key factor in valid scientific methodology is the practice of testing hypotheses to determine whether they can be falsified. *Daubert,* 509 U.S. at 593 (citing Karl Popper, *Conjectures and Refutations: The Growth of Scientific Knowledge* (5th ed. 1989), who emphasized the importance of testing scientific theories to determine whether they can withstand critical scrutiny).

The information Mr. Stolz used to support this analysis consists of a visual inspection of the step stool, some measurements, and a review of background information, which seems to primarily consist of the Plaintiff's deposition. (*Id.*) Mr. Stolz does not point to any quantitative analysis, nor does he cite to any scientific literature. The report gives no indication that Mr. Stolz performed any testing on the step stool to determine whether his design defect theory was correct or to examine the feasibility of his alternative design.

Moreover, Mr. Stolz's report does not reference any safety standards for ladders. Here, the most relevant standards are those promulgated by the American National Standards Institute (ANSI). Mr. Stolz's report does not mention ANSI, let alone the Defendants' expert's test results, which showed that the step stool met the applicable standards for bearing weight. (*See* Doc. 83-7). Without objective standards by which to evaluate Mr. Stolz's claims, the Court is left to rely only on conjecture. For example, given Mr. Stolz's proposed testimony, how would the Court, or a jury, determine whether the hole weakened the step stool to the point where it was structurally unstable? Mr. Stolz's report only supports a finding that the step stool could have been designed to withstand a greater weight, but gives no indication how much weight the current design could withstand.

In contrast, the Defendants' expert, Dr. Mack Quan, tested Mr. Stolz's theory in a lab setting using standard industry tests. He found that the Plaintiff's allegations were implausible: the damages to the step stool could not have occurred with the step stool set on all four feet and with the user atop the second step. (*See* Doc. 83-7 at 17). According to Dr. Quan's affidavit, the second step of the step stool withstood a load of 800 pounds, which "far exeed[ed] the loading induced by a 155 pound user standing on [the step stool] as described by Ms. Heer." (Doc 83-7 at 16-17). In fact, Dr. Quan intentionally bore additional holes in the left and right legs of an

exemplar step stool to weaken the legs, and the stool still withstood a 235 pound load. (Doc. 83-7 at 21).

Similarly, Mr. Stolz does not eliminate or even address a plausible cause for the step stool's collapse. Defendants posit that the Plainitff's fall caused the damage to the step stool, *i.e.*, that her impact caused the step stool's leg to bend. In her deposition, Plaintiff conceded that she presumed she hit the step stool during the course of her fall. (Doc. 85-1 at 31:3-11). Using performance tests and accident reconstruction, Dr. Quan was able to confirm that this was a viable explanation for the damage to the step stool. (Doc. 83-7 at 5).

Again, Mr. Stolz's report ignores Dr. Quan's testing. The report simply assumes that the leg could not have broken but for the alleged design defect, but gives no factual basis to support the conclusion. This is not enough. "[A]n inference to the best explanation for the cause of an accident must eliminate other possible sources as highly improbable, and must demonstrate that the cause identified is highly probable." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1238 (10th Cir. 2004).

Plaintiff argues that because Mr. Stolz is qualified his report is reliable. Indeed, *Kumho Tire*, allows that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience," rather than the *Daubert* factors and scientific foundations. *Kumho Tire,* 526 U.S. at 150. But, when an expert witness's testimony relies solely on experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FED. R. EVID. 702 advisory committee's note (2000). Here, Mr. Stolz did not offer any of this information. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* "[N]othing in either *Daubert* or the Federal Rules of Evidence requires

9

a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also United States v. Nacchio*, 555 F.3d at 1258.

In short, Mr. Stolz's testimony does not meet the reliability requirements of Rule 702 or *Daubert*.[6] Mr. Stolz's proposed testimony is not grounded on sufficient facts or data; it is not the product of reliable principles and methods; nor is there any indication that Mr. Stolz applied those principles and methods reliably to the facts of this case. *See* FED. R. EVID. 702. Moreover, Plaintiff has failed to satisfy any of the four factors identified in *Daubert* with respect to Mr. Stolz's testimony. Mr. Stolz's conclusion that the ladder is defective is based on nothing more than his cursory visual inspection of the ladder and rough measurements, and is not reliable. *See Kuzmech v. Werner Ladder Co.*, 3:10-CV-266 VLB, 2012 WL 6093898 (D. Conn. Dec. 7, 2012).

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Exclude the Testimony of Bradley Stolz (Doc. 82) is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

---

[6] This conclusion is entirely consistent with the Tenth Circuit's treatment of *Daubert* challenges in similar contexts. *See Graves*, 675 F. Supp. 2d at 1103 (citing *Milne v. USA Cycling*, 575 F.3d 1120, 1134 (10th Cir. 2009) (opinions not supported by "empirical or quantitative studies"); *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1126 (10th Cir. 2006), *cert. denied*, 549 U.S. 968 (2006) (*Daubert* not satisfied by casual mention of a few scientific studies which fail to demonstrate that an expert's conclusions are grounded in established research, recognized in the scientific community, or otherwise accepted as scientific knowledge); *Black v. M & W Gear Co.*, 269 F.3d 1220, 1237 (10th Cir. 2001) (expert "had not conducted any tests or calculations to support his opinion")).