## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SUZANNE R. HEER, an individual,

      Plaintiff,

v.                                      No. CIV 12-1059 RB/KBM

COSTCO WHOLESALE CORPORATION,
RUBBERMAID, INC.,
TRICAM INDUSTRIES. INC.

      Defendants.

## MEMORANDUM OPINION AND ORDER

On February 12, 2012, Plaintiff, Suzanne Heer, fell from a step stool while reaching for a vent in her apartment and suffered injuries. Plaintiff now brings suit against Defendants, who are involved in the manufacture or sale of the step stool, alleging these companies are liable for her injuries.

Before the Court is Defendants' Motion for Summary Judgment (Doc. 84). Jurisdiction arises under 28 U.S.C. § 1332. Having considered the submissions and arguments of the parties, the relevant law, and being otherwise fully advised, the Court **GRANTS** Defendants' motion. (Doc. 84).

## Background

This product liability suit involves a TR-3HB-RM Step Stool ("the step stool"). (Doc. 1 at ¶ 1). Plaintiff purchased the step stool from Costco on May 4, 2011. (Doc. 89-3 at 29). The named Defendants were involved in the sale or manufacture of the step stool. The stool was

designed by Tricam Industries, Inc. and sold by Costco Wholesale Corporation. The step stool's brand, "Rubbermaid," was licensed to Tricam Industries, Inc. by Rubbermaid, Inc.

On February 12, 2012, Plaintiff decided to use the step stool to adjust a vent in her home. (Doc. 85-1 at 13:13-19). The vent was located about 99 inches above the floor, far out of reach of the 5 foot 2 inch tall, 155 pound Plaintiff. (Doc. 83-2, Doc. 85-1 at 25:4-1). While on the second of the step stool's three steps, Plaintiff held on to the stool's handle with her left hand and reached up with her right hand towards the vent, which was still out of her reach. (Doc. 85-1 at 20:19-25). Suddenly, Plaintiff found herself on the floor. Both Plaintiff and the step stool had fallen to her left. (*Id.* at 18:14-16; 21:9-16). As Plaintiff lay on the floor, she noticed the step stool's front left leg was bent inward. (*Id.* at 22:6-15).

The fall caused Plaintiff several injuries. She broke her arm in two places. (Doc. 89-2 at ¶ 6). Plaintiff also had a bruise on the inside of her thigh and a scratch, which were not caused by her impact with the ground. (Doc. 85-2 at 38:1-6). Plaintiff hypothesizes the bruise and scratch were a result of her impact with the step stool, which she believed she hit before she landed on the ground. (Doc. 85-1 at 19:1-5; 21:20-25).

Prior to using the step stool, Plaintiff claims she read and understood the step stool's warnings and instructions, and operated the step stool according to those instructions. (Doc. 89-4 at 18:20-22:18). In fact, in the approximately eight month period she owned the step stool prior to the accident, she used the step stool without incident approximately 15 times. (Doc. 85-1 at 8:4-10). During the instance in question, all four feet of the step stool were entirely on the carpeting. (Doc. 85-1 at 15:12-15). While on the stool, Plaintiff did not notice any wiggle or wobble. (Doc. 85-1 at 20:4-7). Plaintiff's weight was evenly balanced on the step stool and her feet were evenly spaced. (*Id.* at 20:12-14).

Plaintiff alleges that the step stool "suddenly and without warning collapsed, causing Plaintiff to fall and sustain serious bodily injuries." (Doc. 1 at ¶ 10). Specifically, Plaintiff claims the leg of the step stool folded under her as she reached for the vent. (Doc. 85-1 at 17:16-25). Accordingly, on October 12, 2012, Plaintiff filed suit against the Defendants, alleging they are liable for her injuries. (Doc. 1).

To support Plaintiff's theory of the case, Plaintiff intended to utilize the expert testimony of Bradley J. Stolz, a trained mechanical engineer. According to Mr. Stolz, the failure of the step stool and Plaintiff's subsequent injuries were the result of a design defect in the step stool. (Doc. 83-11). Mr. Stolz opined that an alternative design, where there was a form of lateral support between the legs of the stool, would have prevented the failure of the step stool. (*Id.*) Defendants moved to exclude Mr. Stolz testimony because it did not meet the requirements of Rule 702. *See* FED. R. EVID. 702. Because Plaintiff's expert's testimony was completely conclusory, the Court granted Defendants' Motion to Exclude in an accompanying order.

Now before the Court is Defendants' Motion for Summary Judgment. Among other things, Defendants argue summary judgment is appropriate because, without Mr. Stolz's testimony, Plaintiff cannot prove an essential element of her case – that a design defect caused Plaintiff's fall.

## Legal Standard

### I.      Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit. An

issue is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence presented.'" *Adams v. Am. Guarantee and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (quoting *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000)).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The trial court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party." *Simms v. Oklahoma ex rel. Dept's of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The movant carries the initial burden of showing that no genuine issue of material fact exists. *Adams*, 233 F.3d at 1246; *Adler v. Wal-Mart Stores, Inc.*, 144 F3d 664, 670 (10th Cir. 1998). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S at 325 (1986). If the movant meets this initial burden, then the burden shifts to the non-moving party to find sufficient evidence that would warrant submission of the case to a trier of fact. *Thomas v. Whichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

## Discussion

At the outset, the Court must consider whether Plaintiff, without expert testimony, offers sufficient proof to demonstrate an essential element of her claims - that Defendant's defective product caused her injury. After careful consideration, the Court determines that Plaintiff has not met her burden in providing evidence in support of this element of her claim. Therefore, summary judgment is appropriate.

# I.      Proof of Defect

Plaintiff brings five products liability claims against the various Defendants: (1) breach of express warranty; (2) breach of implied warranty; (3) negligence; (4) strict liability and (5) breach of the New Mexico Unfair Practices Act, NMSA §§ 57-12-3, *et seq*. While the individual elements of these claims vary, all require proof that Defendants' defective product caused Plaintiff's injuries.[1] *See* UJI 13-1424 NMRA 2013 use note (requiring that the causation jury instruction be given in all products liability cases). More specifically, in order to make a prima facie case under any of her theories of liability, the Plaintiff must be able to show that the step stool was defective.[2]

Other than her proposed expert testimony, Plaintiff offers no direct evidence on the existence of a defect. However, Plaintiff argues that circumstantial evidence and proof of similar occurrences are enough to demonstrate that the step stool was defective.

## a.   Circumstantial Evidence

Under New Mexico Law, circumstantial evidence may be used to prove facts. *See Martin v. Unit Rig & Equip. Co., Inc.*, 715 F.2d 1434, 1439 (10th Cir. 1983) (citing *Richards v. Upjohn Co.,* 95 N.M. 675, 625 P.2d 1192 (N.M. Ct. App.), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980)). However, the use of circumstantial evidence is limited. Circumstantial evidence must support a conclusion based rationally and logically on the "facts established by the evidence when viewed in light of common experience." *Andrus v. Gas Co. of New Mexico, a Div. of Pub. Serv. Co. of New Mexico*, 1990-NMCA-049, 110 N.M. 593, 596, 798 P.2d 194, 197 (N.M. Ct.

---

[1] Under New Mexico Law, a defective product is one that creates "an unreasonable risk of injury resulting from a condition of the product or from a manner of its use." UJI 13-1406 NMRA 2013. "A defective product is 'a cause' of injury if it contributes to bringing about the injury, and the injury would not have occurred without it." UJI 13-1424 NMRA 2013.

[2] A claim under the New Mexico Unfair Practices Act requires Plaintiff to prove that Defendants sold the step stool knowing that it was unsafe, *i.e.*, defective. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1259 (D.N.M. 2010). Similarly, all of the other products liability causes of action require proof that the product was defective. *See* Pac. *Indem. Co. v. Therm-O-Disc, Inc.*, 476 F. Supp. 2d 1216, 1224 (D.N.M. 2006).

App. 1990). In other words, in this case, the circumstantial evidence and proof of facts must support a reasonable inference that a defect caused Plaintiff's injuries. *See* UJI 13-308 NMRA (2013).

Plaintiff claims the following facts are sufficient to give rise to a reasonable inference that the step stool was defective:

> Plaintiff was using the step-stool in her condominium when it suddenly and unexpectedly collapsed from underneath her. The first sensation Plaintiff felt was her falling. Plaintiff was using the step stool in accordance with manufacturer's instructions and recommendations. After the ladder collapsed from underneath her, Plaintiff blacked out in the ensuing fall. Plaintiff woke up on the floor, looked at her arm, and knew that it was broken.

(Doc. 89 at 20).

Plaintiff argues the use of circumstantial evidence in this case is analogous to *Carter Farms Co. v. Hoffman-LaRoche, Inc.* 83 N.M. 383, 492 P.2d 1000 (N.M. Ct. App. 1971); *see also Lovington Cattle Feeders, Inc. v. Abbott Labs*, 97 N.M. 564, 568, 642 P.2d 167, 171 (1982) (affirming the reasoning of *Carter Farms*). In *Carter Farms*, the plaintiff, a sheep farmer, brought a products liability action against the manufacturer of a vaccine-type solution he used on his animals. *Id.* at 384. Of the first 1000 lambs to be injected with the solution – which was generally considered to be without side effect – over 40 percent developed infected abscesses at the point of injection. *Id.* at 385. In total, 192 of the 5000 lambs injected with the solution died, the vast majority of which came from the first 500 lambs injected. *Id.*

This case is distinguishable for several critical reasons. First, in *Carter Farms*, there is a significant sample size, and an extremely high correlation between use and injury, from which to determine the existence of a defect. Here, Plaintiff used the step stool fifteen uneventful times prior to the incident in question. If a design defect prevented the step stool from safely holding the weight of 155 pound person using the step stool as instructed, it would be expected that this

problem would become apparent very quickly. Second, unlike *Carter Farms*, Plaintiff's theory of the case is easily testable. In fact, Defendants performed extensive testing on the step stool, which contradicts Plaintiff's theory of causation. And, third, in *Carter Farms*, there was significant testimony ruling out other possible causes of the sheep's illness. Specifically, both the owner of the sheep, who was experienced with sheep, and a veterinarian testified, ruling out several other possible causes of the infected abscesses. *Id.* at 384. No such testimony is offered in this case.

Since no analogous case is presented, this Court looks to the specific facts of this case to determine whether the circumstantial evidence offered is enough to survive summary judgment. In making this determination, the Court must engage in a relatively straight-forward inquiry. The Court must decide whether the evidence presented is capable of convincing a rational juror that the Plaintiff's conclusion is more probable than any other alternative. *See Andrus,* 110 N.M. at 596, 798 P.2d at 197.

Defendants argue that the circumstances, along with the other evidence, should lead a rational juror to a completely different conclusion – one that does not require finding that the step stool was defective. Specifically, Defendants argue that the most probable conclusion is that Plaintiff tipped the step stool over and fell on her own. The Court agrees.

Both the direct and the circumstantial evidence support this alternate theory. In terms of direct evidence, Defendants offer exhibits indicating that the step stool passed all standard industry performance tests. (*See* Doc. 83-3, 83-4). While the step stool's compliance with national performance standards is not conclusive evidence that the step stool is mechanically sound, this evidence is relevant in determining "whether the manufacturer was negligent or

whether the product poses an unreasonable risk of injury." *See Brooks v. Beech Aircraft Corp*., 120 N.M. 372, 381 902 P.2d 54, 63 (N.M. 1995).

Moreover, Defendants' expert, Dr. Mack Quan, offered uncontroverted testimony that the step stool was structurally sound and could not have broken in the manner Plaintiff alleges.[3] Through testing, Dr. Quan found: (1) the step stool passed the germane testing protocols for ladders; (2) the step stool withstood a load of 800 pounds; (3) damage to the step stool could not have occurred unless the step stool was first tipped over and impacted at its left leg; and (4) the vectors of force created by a user standing on the second step of the step stool would cause the legs to break outwards, not inwards. (*See* Doc. 83-7). In fact, Dr. Quan intentionally bored holes in both legs of the step stool to weaken it in a manner consistent with Plaintiff's expert's theory, and found that the step stool withstood a load of 235 pounds – much greater than Plaintiff's 155 pound body weight. (*Id.*)

The circumstantial evidence also supports this alternate theory. Plaintiff testified to the following facts: (1) she used the step stool fifteen previous times without incident; (Doc. 89-4 at 11:1-13); (2) she was reaching for the vent, which was still out of her reach, when she fell (Doc. 85-1 at 17:16-21); and (3) she believed she hit the ladder before hitting the ground. (Doc. 89-4 at 31:6-11). From these facts, a jury can reasonably infer that the step stool was structurally sound; that Plaintiff fell while reaching upward, when she was most likely to be unstable; and, that her impact with the step stool caused the step stool's leg to break.

In sum, without expert testimony, the circumstantial evidence is not sufficient to support Plaintiff's preferred conclusion. "An inference which will support a judgment cannot be supposition or conjecture, but must be a logical deduction from facts proven. *Springer Corp. v.*

---

[3] Plaintiff argues that Dr. Quan's reenactment of Plaintiff's fall was not exact because he did not have measurements of the scene of the accident. (Doc. 89 at 17). However, Plaintiff does not argue that Dr. Quan used materially different measurements or that Dr. Quan's findings are otherwise unreliable.

*Dallas & Mavis Forwarding Co., Inc.*, 90 N.M. 58, 60, 559 P.2d 846, 848 (N.M. Ct. App. 1976), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977) (internal citations omitted). Since Plaintiff cannot prove that her conclusion is a logical deduction from facts proven, summary judgment is appropriate.

    b.  <u>Other Similar Incidents</u>

Plaintiff argues two suits against the Defendants, which the Court will refer to as the *Ensley* and *Nickel* incidents, are similar to the current suit and should be considered as further circumstantial evidence showing the step stool was defective. The Court disagrees.

Even if the evidence of other accidents is relevant, it must be admissible in order for it to be considered by the Court. This requires that the party seeking its admission to show that "the circumstances surrounding the other accidents were substantially similar to the accident that is the subject of the litigation before the court." *Black v. M & W Gear Co.,* 269 F.3d 1220, 1227 (10th Cir. 2001).

In the absence of expert testimony, Plaintiff offers no evidence to demonstrate that the *Ensley* and *Nickel* incidents are substantially similar to this case.[4] Rather, the Court is left to rely on Plaintiff's bald assertions that the incidents are similar. This is not enough. Therefore, the evidence of these incidents is not admissible.

In sum, Rule 56(c) requires this Court to enter summary judgment, if, "after adequate time for discovery and upon motion," the Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *See Celotex*, 477 U.S. at 322.

---

[4] The Court understands discovery regarding the *Nickel* incident was subject to a Motion to Compel, which was granted. (*See* Doc. 117). However, at this point, the possible existence of further evidence on the *Nickel* incident does not alter the Court's conclusion regarding summary judgment. Simply put, at the end of the discovery period, Plaintiff has not provided any evidence showing that the *Nickel* incident is substantially similar to the current case. However, if after Defendants disclose the materials subject to the Motion to Compel – which this Court expects them to do – Plaintiff will have the opportunity under Rule 60 to seek relief from this judgment. *See* Fed. R. Civ. P. 60.

Here, because Plaintiff cannot establish an essential element of her claim – *i.e.,* the existence of a defect – summary judgment is appropriate.

**THEREFORE,**

      **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 84) is **GRANTED**.

      **IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment Regarding the Availability of Post-Sale Injunctive Relief Under New Mexico Law (Doc. 81) is **DENIED** as moot.

 

 

 

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**